J-S24017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: K.R.B. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.B., MOTHER | : | No. 376 WDA 2021 |

Appeal from the Order Entered February 18, 2021
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  65A In Adoption 2020

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: K.J.D. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.B., MOTHER | : | No. 377 WDA 2021 |

Appeal from the Order Entered February 18, 2021
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  No. 65 in Adoption 2020

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.*

MEMORANDUM BY KING, J.:                    **FILED: August 31, 2021**

Appellant, M.B. ("Mother"), appeals from the orders entered in the Erie County Court of Common Pleas, which granted the petitions of the Office of Children and Youth ("OCY") for involuntary termination of Mother's parental rights to her minor children, K.R.B. and K.J.D. ("Children").  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> The instant case began in Dependency Court on March 5, 2018, with Minor Child K.R.B. [(born 10/17)] being removed from Mother and Father's custody and placed temporarily

---

* Former Justice specially assigned to the Superior Court.

into [OCY]'s legal and physical custody. … [Mother] was arrested on March 5, 2018 due to having an active warrant.

On March 8, 2018, following a full hearing on the record, Dependency Court ordered custody of …K.R.B. to remain with [OCY], as returning …K.R.B. to Mother's care was not in …K.R.B's best interest. Mother appeared in person at said hearing and stipulated to continued temporary shelter care pending an adjudication hearing.

On March 15, 2018, following a full hearing on the record, Dependency Court adjudicated …K.R.B. dependent. Dependency Court found clear and convincing evidence existed indicating …K.R.B. was without proper parental care and control as it pertained to Mother for the following reasons: 1) Mother's history with Venango County Children and Youth Services due to "[Mother] abusing drugs, unstable mental health, failure to follow through with medical care and unstable housing and homelessness;" 2) Mother's severe drug addiction, including her being under the influence when …K.R.B. was removed from her custody; 3) Mother's history of unstable housing, including that she was homeless at the time of …K.R.B.'s removal; 4) Mother's "fail[ure] to attend at least three (3) medical appointments since [K.R.B.]'s birth," and the fact that …K.R.B. had not seen a primary physician since October 2017; 5) Mother's criminal history, including numerous retail theft and drug related criminal convictions; and 6) on the date …K.R.B. was removed from Mother's custody, …K.R.B. was found alone, "unrestrained in a car seat and near syringes in a vehicle that had all of the windows down despite the inclement weather," after which Mother, [maternal grandmother], and Mother's brother appeared at the scene under the influence of drugs and/or alcohol according to law enforcement performing the welfare check. Mother appeared at the adjudication hearing and stipulated to the accuracy of Dependency Petition allegations.

In Dependency Court's March 15, 2018 Order, Dependency Court established …K.R.B.'s permanent placement goal as return …K.R.B. to a parent or guardian. Dependency Court also approved …K.R.B.'s permanency plan, which directed Mother to meet the following requirements: 1) Mother shall maintain stable employment; 2) Mother shall maintain safe

and stable housing, and all household members must be approved by [OCY]; 3) Mother shall refrain from drugs and/or alcohol and submit to urinalysis tests via Esper Treatment Center's Color Code Program; 4) Mother shall participate in mental health assessment and follow any recommendations; 5) Mother shall comply with her probation through Erie County; 6) Mother shall execute all releases for [OCY]; and 7) Mother shall contact …K.R.B.'s [OCY] on-going caseworker at least two (2) times per week. Mother was granted visitation with …K.R.B. at least two (2) times per month, which increased in frequency and duration if Mother complied with her requirements under …K.R.B's permanency plan. Mother's visitation was contingent upon Mother demonstrating she had clean urinalysis screenings.

On June 1, 2018, Dependency Court issued a Permanency Review Order regarding …K.R.B.'s dependency proceedings, after conducting a full hearing on the record on May 30, 2018, to which Mother attended in person represented by her counsel. Dependency Court found Mother had made moderate progress toward alleviating the circumstances that necessitated …K.R.B.'s removal. Dependency Court found …K.R.B.'s best interest was to remain in [OCY]'s custody…. …[K.R.B]'s permanent placement goal remained return …K.R.B. to a parent or guardian. …

[In] October [of], 2018, …K.J.D. was born. Mother had full custody of …K.J.D. at this time.

On November [29], 2018, Dependency Court issued a second Permanency Review Order regarding …K.R.B.'s dependency proceedings, after conducting a full hearing on November 21, 2018, to which Mother did not attend but was represented by counsel. Dependency Court found Mother substantially complied with …K.R.B.'s permanency plan. …K.R.B.'s permanent placement goal continued to remain return to a parent or guardian.

In December 2018, …K.R.B. was returned to Mother's custody. At that time, Mother had custody of both …Children.

\*     \*     \*

- 3 -

On July 23, 2019, …K.J.D. was removed from Mother's and Father's custody and placed temporarily into [OCY]'s legal and physical custody pursuant to an Emergency Protective Order stating removal was necessary for the welfare and best interest of …K.J.D. Moreover, …K.R.B. was also removed from Mother's custody. At the time of removal of …Children on July 23, 2019, Mother was already incarcerated and had been incarcerated since July 17, 2019.

On July 26, 2019, …Dependency Court ordered custody of …K.J.D. to remain with [OCY] in the best interest of …K.J.D. Mother did not appear at said hearing as Mother was incarcerated after failing a probation-required drug screening.

On August 6, 2019, …Dependency Court adjudicated …K.J.D. dependent. Mother attended in person and was represented by her counsel. Dependency Court found clear and convincing evidence indicating …K.J.D. was without proper parental care and control as it pertained to Mother for the following reasons: 1) Mother's past history with [OCY] when …K.R.B. was adjudicated dependent and with Venango County, for another minor child not in her care… "due to concerns of drug use, lack of stable housing, and mental health;" 2) Mother had been incarcerated twice since June 28, 2019 due to failed probation-required drug screenings; 3) Mother's hospitalization at Millcreek Community Hospital due to her poor mental health, and that Mother checked herself out of Millcreek Community Hospital against medical advice; and 4) Mother's criminal history. Mother stipulated to Dependency Petition allegations and agreed to …K.J.D.'s placement at said hearing.

In Dependency Court's August 6, 2019 Order, Dependency Court established …K.J.D.'s permanent placement goal as return…to a parent or guardian. Dependency Court also approved …K.J.D.'s permanency plan, which directed Mother to follow the court-ordered treatment plan under …K.R.B.'s permanency plan, and also required Mother to participate actively in drug and alcohol treatment so Mother could "gain an understanding of how her drug use affects her mental health and decision making." Mother was granted visitation with …K.J.D., which would increase in frequency and duration if Mother complied with her court-

ordered treatment plan.

On November 7, 2019, Dependency Court issued two Permanency Review Orders, one for each …Child, following a full hearing on November 1, 2019 regarding both …Children…. Dependency Court found Mother made minimal progress toward alleviating the circumstances necessitating …Children's removal from Mother's custody. Dependency Court found …Children's best interests were to remain in [maternal aunt's] kinship home. …Children's permanent placement goals remained return…to a parent or guardian. Mother's visitation with …Children was contingent upon Mother demonstrating clean urinalysis screenings. Mother was directed to continue to follow the court-ordered treatment plan.

[Following a May 5, 2020 hearing, Dependency Court again found Mother to be minimally compliant with Children's permanency plans. Dependency Court changed Children's permanent placement goals to return to a parent or guardian, concurrent with adoption.]

On July 13, 2020, Dependency Court issued two Permanency Review Orders, one for each …Child, following a full hearing on July 6, 2020 regarding both …Children…. Dependency Court found Mother made only minimal progress toward alleviating the circumstances that necessitated …Children's removal from Mother's custody. Dependency Court found …Children's best interests were to remain in [maternal aunt's] home. Dependency Court changed …Children's permanent placement goals to adoption. Dependency Court ordered no further services, including visitation, shall be offered to Mother.

On August 5, 2020, [OCY] filed these Petitions to Involuntarily Terminate Mother's parental rights as to each …Child. [The court] held the [termination] hearing on February 12, 2021.

(Trial Court Opinion, filed April 16, 2021, at 4-13) (internal citations and some

quotation marks omitted).

Following the hearing, the court entered orders on February 18, 2021,

terminating Mother's parental rights to Children. On March 18, 2021, Mother timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).[1] This Court consolidated the appeals *sua sponte* on June 1, 2021.

Mother raises the following issues for our review:

> Whether the Orphans' Court committed an abuse of discretion and/or error of law when it concluded that the agency had not established, by clear and convincing evidence grounds for termination of parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8)?

> Whether the Orphans' Court committed an abuse of discretion and/or error of law when it concluded that the termination of [Mother's] parental rights was … in the children's best interests under 23 Pa.C.S.A. § 2511(b)?

(Mother's Brief at 3).

In her issues combined, Mother challenges the trial court's decision to terminate her parental rights to Children under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). Regarding Section 2511(a), Mother claims the court erred in making this determination, where she (1) managed to "remain clean of all drugs and alcohol during her time incarcerated;" (2) maintained employment for several months prior to the termination hearing; (3) had a family support system in place to provide childcare; (4) attended most of the permanency review hearings and "demonstrated a commitment to being

---

[1] Father voluntarily relinquished his parental rights to Children and is not a party to this appeal.

present and working on her case…to achieve reunification;" and (5) lived in a motel with maternal grandmother which, while "not ideal," could "accommodate …[C]hildren." (Mother's Brief at 6-7).

Concerning Section 2511(b), Mother insists it is in the best interest and "permanent well-being" of Children to be in her care, as she is Children's mother. (*Id.* at 8). In support of this contention, Mother argues she "has demonstrated a stable living environment and employment with childcare to be provided by the maternal grandmother." (*Id.*) Mother concludes the trial court erred in terminating her parental rights, because it lacked clear and convincing evidence that the statutory grounds for termination were met under Section 2511(a)(1), (2), (5), (8) and (b). We disagree.

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en*

- 7 -

*banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).

> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

OCY filed petitions for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the

petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b)  Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117. When conducting a termination analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…[her] parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

- 10 -

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

Instantly, regarding Section 2511(a)(1), the trial court discussed Mother's failure to follow her court-ordered treatment plan as follows:

- 11 -

[I]n the instant case, …Children were removed from Mother's care due to Mother's drug usage resulting in Mother's incarceration twice prior to …Children's emergency removal in July 2019. Mother was committed into Millcreek Community Hospital in June 2019 due to "paranoia, hearing voices; at one point [Mother] had left the home, was wandering around…," but Mother refused to stay for the full course of mental health treatment and "left early" against medical advice. Mother also failed to treat consistently her mental health. Mother did not maintain stable housing appropriate for …Children. Mother failed to seek consistently drug and alcohol treatment [and] Mother failed to appear for numerous random drug screenings at Esper Treatment Center. Mother "was not employed during that time period" of November 2019 to May 2020 and did not inform [OCY]'s caseworker as to whether she was employed during the final permanency review period from May 2020 to July 2020. Mother's last visit with …Children was October 2019, despite Mother having "been afforded the opportunity" to have video visits with …Children during the Covid-19 pandemic in the spring of 2020, which included a May visit especially for Mother's Day.

[OCY's] caseworker would discuss with Mother "her accountability, and the importance for her meeting her appointments, [Mother] could not put two and two together that, in order for [Mother] to…remain compliant, she had to follow through…." [OCY's] caseworker explained to Mother the effect of Mother's incarceration on her ability to parent …Children; however, Mother "would still continue to put blame on the agency, not giving her the opportunity to be able to parent her kids, even though she was given the opportunity prior." Dependency Court found Mother minimally compliant with her court-ordered treatment plan in May 2020, despite "a total non-compliance with [Mother]" between April and May 2020, and "[Dependency] Court gave [Mother] another try." In May 2020, Dependency Court told Mother "step it up, or we're changing the goal…." Despite having been informed about her court-ordered treatment plan at the final permanency review hearing, Mother testified she did not have an "understanding of what was b[e]ing asked of [her] due to not having a permanency review order in [her] hands…." "[Mother] started with a little bit…right after [Dependency Court] gave her a

warning, then lapsed right back to where she was before the hearing….”

(Trial Court Opinion at 30-32) (internal citations omitted).

Regarding Section 2511(b), the court explained:

> In the instant case, [the kinship caregiver] is …Children's maternal aunt, with whom Mother does not have an on-going relationship, and her home is a kinship and adoptive resource for …Children. …Children are doing very well in [maternal aunt's] home. The…kinship home has more than met both …Children's physical, emotional and social needs. [Maternal aunt] is a good adoptive resource for …Children. "[Children] have been there for quite some time, and they are doing incredibly well." Both …Children refer to [maternal aunt] as "mom" and …Children have developed a "maternal bond" with [maternal aunt]. …Children have formed a "sibling bond" with the other…children [in maternal aunt's home]. The other…children "play with [Children] and interact with [Children] in a positive manner." [Maternal aunt's] home has passed all home studies and is size appropriate for …Children.
>
> …K.R.B. is only three (3) years old, and …K.J.D. is only two (2) years old. [OCY] has been involved in …K.J.D.'s life "the entire time she's been alive…" and …K.R.B. was "five months old when [OCY] first got involved." Mother has little, if any, relationship with …Children. Both …Children are developing normally in [maternal aunt's] care. …Children are behaviorally "typical" two- and three-year-olds. "[G]iven [Children's] very young ages, [Children] do need a provider that will provide them with a stable home, that will ensure all of their needs are being met, that [Children] have food, snacks, that they're being taken care of and loved, and they do have that in their current placement." [OCY] could not offer "any other services" or done "anything more" to reunify Mother with …Children. Severing Mother's parental rights will have no detrimental effect on these …Children and termination of Mother's parental rights is in these …Children's best interest. This…[c]ourt considered the relationship between Mother and …Children and found little, if any parent-child relationship existed, therefore, severing Mother's parental rights to these …Children will have no

- 13 -

detrimental effect on [either] of these …Children.

(Trial Court Opinion at 40-42) (internal citations omitted).  We agree with the trial court's analysis.  On this record, Mother has demonstrated a refusal or failure to perform parental duties warranting termination of her parental rights under Section 2511(a)(1).  *See* 23 Pa.C.S.A. § 2511(a)(1); *Z.S.W., supra*. Thus, we need not address the remaining Section 2511(a) subsections.  *See In re Z.P., supra* at 1117.  Further, the record makes clear termination will best serve the needs and welfare of Children, per Section 2511(b).  *See* 23 Pa.C.S.A. § 2511(b); *Z.P., supra*.  Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  08/31/2021